Case 3:23-cv-00356   Document 39   Filed on 02/25/25 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
February 25, 2025
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## Galveston Division

No. 3:23-cv-356

Michael Ramirez, *Plaintiff*,

v.

City of Texas City, *Defendant*.

### MEMORANDUM OPINION AND ORDER

Jeffrey Vincent Brown, *United States District Judge*:

Before the court are cross motions for summary judgment by Texas City, Dkt. 25, and Michael Ramirez, Dkt. 27. The parties also filed cross motions to strike each other's experts. Dkts. 32, 33. The court will deny both motions to strike, Dkts. 32, 33, deny the city's motion for summary judgment, Dkt. 25, and grant Ramirez's motion for summary judgment in part and deny it in part, Dkt. 27.

### I. Background

Ramirez's home was significantly damaged by a fire in April 2022. Dkts. 25 ¶ 8; 27 ¶ 1. Shortly after, the city sent Ramirez a notice that his fire-damaged home was a "substandard structure . . . unfit for human

habitation" and presented a "clear and imminent danger to the life, safety[,] or property of any person" and a nuisance that would be "abated" by the city without further notice. Dkt. 25-3. The city also placed conspicuous notice signs on the property. Dkt. 25-4. The city afforded Ramirez time to bring his home out of disrepair, but no repairs were made. Dkt. 1-1 ¶¶ 9–12. The home languished for about a year before the city demolished it without further notice in May 2023. Dkts. 25 ¶ 16; 27 ¶ 2.

Ramirez filed this lawsuit in state court, alleging the city demolished his home in violation of the U.S. and Texas Constitutions by not providing proper pre-demolition notice, judicial process, or just compensation. Dkt. 1-1 at 8–11. The city removed to this court, invoking federal-question jurisdiction. Dkt. 1 ¶ 2. Ramirez moved for partial summary judgment, arguing the city "deprived [him] of due process, as no procedure was used—neither a municipal court trial, nor a public hearing" prior to demolition. Dkt. 6 ¶ 15. The city responded with evidence, stating Ramirez was notified of his property's condition and had over a year to repair it. Dkt. 9 ¶¶ 23, 30. It further argued the city does not owe Ramirez compensation because the demolition was an exercise of its emergency police power and therefore did not constitute a taking. *Id.* ¶ 28. The court denied Ramirez's motion and the parties proceeded with discovery. Dkts. 15, 18. The parties then filed cross

motions for summary judgment, largely reasserting the issues raised in briefing the motion for partial summary judgment, and cross motions to strike the other's expert witnesses. Dkts. 25, 27, 32, 33.

The court will begin with the cross motions to strike and then turn to the cross motions for summary judgment.

## II. Cross Motions to Strike

### A. Ramirez's Motion

Ramirez argues in his motion to strike that the city's non-retained expert witness, Jason Brown, is "not qualified to testify as an expert on due process or the condition of [Ramirez's] home in May 2023" because he "is not an architect, or engineer, and didn't work in the construction field outside of high school," nor did he visit the home within the year before demolition. Dkt. 32 ¶¶ 5, 10–11. The city's rebuttal is that Brown's opinions are based on facts and data he has been "made aware of or [has] personally observed" during his employment in the city's fire department. Dkt. 36 ¶¶ 3, 7 (quoting Fed. R. Evid. 703). The city adds that throughout Brown's twelve-year employment, he has "routinely relie[d] on reports and pictures taken by employees of the [c]ity and uses these facts or data to determine if a building is deemed substandard and needs to be abated." *Id.* ¶ 7.

Qualifying experts are those with "such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992); Fed. R. Evid. 702(a). This "helpfulness threshold is low: it is principally [] a matter of relevance" and reliability. *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (citation omitted); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("[T]he rejection of expert testimony is the exception rather than the rule.").

Brown has been employed by the city's fire department for twelve years and has served as fire marshal for three. Dkt. 36 ¶ 7. He holds numerous fire-related certificates and routinely interacts with "the procedure employed by the [c]ity for determining whether or not a building is substandard." *Id*. Some of his fire-related certificates required course completion in "basic building construction" and "char and burn patterns." Dkt. 25-7 at 9. The court finds that Brown's experience qualifies him to offer an opinion on whether Ramirez's home is "substandard" due to its fire damage. Accordingly, the court denies Ramirez's motion to strike. Dkt. 32.

### B. The City's Motion

The city argues Michael Gaertner and Greg Brooks should be struck from Ramirez's designated-experts list because Ramirez's non-retained

expert disclosures "fail[] to give an adequate summary of the facts and op[inions] that are required to be disclosed." Dkt. 33 ¶ 8. Ramirez's response points to voluminous exhibits that allegedly meet the non-retained expert disclosure requirements of Fed. R. Civ. P. 26(a)(2)(C). Dkt. 34 ¶¶ 6–8. The court will deny the city's motion to strike and grants Ramirez a final opportunity to bring his expert disclosures in compliance with Rule 26.

Non-retained expert disclosures must state "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). A factual summary is "a brief account of facts—only those on which the expert actually relied in forming his or her opinions—that states the main points derived from a larger body of information." *Tolan v. Cotton*, No. CIV.A. H-09-1324, 2015 WL 5332171, at *6 (S.D. Tex. Sept. 14, 2015) (citation omitted). To be clear, "it does not suffice to reference large bodies of material sources of facts, without stating a brief account of the main points from those large bodies of material on which the expert relies . . . [and] a view or judgment regarding a matter that affects the outcome of the case." *Id.*

Here, Ramirez's expert disclosure spans over 200 pages. Dkt. 33-3. Under the subtitle, "CONDITION AND REPAIRABILITY OF HOME,"

Ramirez lists Gaertner and Brooks as experts. *Id.* at 1–2. The court concludes the subtitle alone meets the first requirement of Rule 26(a)(2)(C). Missing, however, is a summary of the facts and opinions each expert will testify to. As to Gaertner, Ramirez simply refers to three exhibits that total 171 pages. Dkt. 33-3 at 2. Brooks' disclosure is even less helpful; it refers only to Ramirez's second-supplemental initial disclosure, which does not contain a summary of the facts and opinions underlying Brooks' testimony. Dkt. 33-3 at 202. The court does not expect the city to wade through over 200 pages of reports, e-mails, text messages, depositions, photos, and diagrams just to figure out what Gaertner and Brooks will testify to. The court therefore orders Ramirez to amend his expert disclosures so that they comply with Rule 26(a)(2)(C)(ii) by **March 10, 2025**. Failure to do so will result in the striking of Ramirez's expert designations. So for the time being at least, the court denies the city's motion to strike. Dkt. 33.

### III. Cross Motions for Summary Judgment
#### A. Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross motions for summary judgment, the court views "each party's motion independently, viewing the evidence and

inferences in the light most favorable to the nonmoving party." *Century Sur. Co. v. Colgate Operating, L.L.C.*, 116 F.4th 345, 349 (5th Cir. 2024). For each cause of action moved on, the movant must set forth those elements for which it contends no genuine dispute of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to offer specific facts showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

The court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But when "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Summary judgment serves to "dispose of factually unsupported claims and defenses." *Amaya v. City of San Antonio*, 980 F. Supp. 2d 771, 776 (W.D. Tex. 2013).

**B. Analysis**

The city argues there is no genuine issue of material fact that (1) it provided appropriate notice before demolishing Ramirez's property and (2) the property's demolition is not a taking, and therefore did not require any notice because the home was "substandard" and presented a "clear and imminent danger to life, safety, and/or property." Dkt. 25 ¶¶ 21–25, 31–34. Ramirez's cross motion asserts that because there is no evidence his home presented a "clear and imminent danger," the city had no authority to demolish it. Dkt. 27 ¶¶ 4, 21. He further claims that even if the city had such authority, there is no evidence the city provided Ramirez with pre-demolition notice that included, among other things, a clear determination from a concurrence of certain city officials that there were no other reasonably available abatement procedures. *Id*. ¶¶ 5, 41.

Due process generally requires the government to give individuals notice and an opportunity to be heard before depriving them of a "significant property interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (citation omitted). In "emergency situations," pre-deprivation notice "may yield to the exigencies of 'summary administrative action.'" *Kinnison v. City of San Antonio*, 480 F. App'x 271, 276 (5th Cir. 2012) (quoting *Hodel*

*v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 299–300 (1981)).[1] But "a city may not arbitrarily enter abatement orders or declare the existence of nuisances with no underlying standards." *Freeman v. City of Dall.*, 242 F.3d 642, 652–53 (5th Cir. 2001). This is precisely why cities enact emergency procedures for identifying "clear and imminent dangers" and notifying property owners. Even "[i]n the absence of a deficient procedural regime, a procedural due process claim may nonetheless succeed if the state actor unreasonably decided to summarily effect a property deprivation." *Kinnison*, 480 F. App'x at 277.

To the city's credit, it has procedural protections in place. Under Texas law, a municipality may require a property's demolition if it is "dilapidated, substandard, or unfit for human habitation and a hazard to the public health, safety, and welfare." Tex. Loc. Gov't Code § 214.001(a)(1). And under local law, the city "Fire Marshal, Director of Community Development, Director of Municipal Services, or Chief Building Official or their designees" may order a building's demolition if the building presents "a clear and imminent

---

[1] The city contends emergency demolitions do not require notice. Dkt. 25 ¶¶ 21–30. Where no pre-deprivation notice is given, however, post-deprivation process is required. *RBIII, L.P. v. City of San Antonio*, 713 F.3d 840, 844 (5th Cir. 2013). Because neither party offered evidence on the post-deprivation process here, the court will not speculate whether Ramirez received adequate due process through post-deprivation procedures.

danger to the life, safety[,] or property of any person." Tex. City, Tex., Code of Ordinances Title XV, ch. 150, § 038(A)(1). Before any demolition may occur, "[t]he concurrence of two [] officials shall be required" and "[s]uch concurrence shall include a determination that under the circumstances no other abatement procedure is reasonably available except demolition." *Id.* Notice of the officials' determination must then be issued: "(a) [b]y placard affixed to the property or by stake driven into the ground []; (b) [v]ia hand-delivery to the owner(s) of record []; and (c) [b]y email to the Mayor." *Id.* § 150.038(A)(2)(a)–(c). "Within 72 hours of notice, a plan of action to stabilize the structure" must be developed. *Id.* § 150.038(A)(3). If the plan is not feasible, then "the required affidavits shall be executed for commencement of the emergency demolition." *Id.* § 150.038(A)(3)(b). Only "after the last required written concurrence is made" may emergency demolition procedures begin. *Id.* § 150.038(A)(3)(c).

The notice issued to Ramirez does not state (1) a concurrence that the proper city officials deemed his property a "clear and imminent danger" or (2) that this concurrence also determined no other abatement procedure was reasonably available except demolition. Dkt. 25-3. There is also no evidence the city sent a copy of the notice to the mayor, as required under section 150.038(A)(2)(c). Moreover, the city failed to demonstrate that "a last

required written concurrence [wa]s made" prior to commencing demolition. Code of Ordinances Title XV, § 150.038(A)(3)(c). All of these are procedural protections that govern emergency demolitions in Texas City. Because the record shows that few were followed, summary judgment is warranted on the issue of whether the city violated Ramirez's due-process rights.[2]

The court now turns to whether Ramirez's home presented a "clear and imminent danger." The city's evidence shows Ramirez's home posed some danger. *See* Dkts. 25-7 at 11–12 (discussing theft and break-ins that occurred while the home was vacant); 25-2 (photos showing thick layers of ash on floors, burnt ceilings and wiring, crumbling walls, broken windows, and scattered shards of glass). But determining if an emergency, or "a clear and imminent danger," was present requires review of the city's demolition-

---

[2] The city argues because "[t]here is no penalty for failure to adhere to the ordinance as provided," Ramirez does not have a private right of action. Dkt. 28 ¶ 5. The court doubts that. City code section 150.027, found in the same subchapter as section 150.038, provides that any property owner "aggrieved by any decision of a Commission may present a petition to a district court, . . . setting forth that the decision is illegal, in whole or part, and specifying the grounds of the illegality." Tex. City, Tex., Code of Ordinances Title XV, ch. 150, § 027. One of the Commission's many functions is to order the removal of "any substandard building found to exist." *Id.* § 150.025(c). And "a majority vote of the members voting on a matter is necessary to take any action under this subchapter and any ordinance adopted by the city in accordance with this subchapter." *Id.* § 150.026. Applying basic rules of construction, the judicial review guaranteed under section 150.027 applies to issues arising under a different section of the same subchapter, such as section 150.038.

decision process. *Kinnison*, 480 F. App'x at 277–78 ("[T]he City's actions may be excused for procedural due process purposes only if the imminent-danger determination was not an abuse of discretion."); *see also RBIII*, 713 F.3d at 845 (stating in pre-notice deprivation cases, "the relevant inquiry is not whether an emergency actually existed, but whether the State acted arbitrarily or otherwise abused its discretion in concluding that there was an emergency requiring summary action"). That evidence is not before the court. Further, the amount of time between the city's notice of "clear and imminent danger" and demolition—roughly a year—"call[s] into question 'the existence *vel non* of an emergency." *See Kinnison*, 480 F. App'x at 279 (concluding nine-month delay between inspection and demolition was evidence of the city's unreasonable imminent-danger determination) (citation omitted). It is therefore unclear whether Ramirez's home presented a "clear and imminent danger" that rose to the level of an emergency at the time of demolition. The court denies summary judgment on this issue.

\* \* \*

For the foregoing reasons, the court denies both motions to strike, Dkts. 32, 33, denies the city's motion for summary judgment, Dkt. 25, and grants Ramirez's motion for summary judgment on the due-process issue and denies it as to clear and imminent danger. Dkt. 27.

Signed on Galveston Island this 25th day of February, 2025.

                                                  _____
                                                  JEFFREY VINCENT BROWN
                                                  UNITED STATES DISTRICT JUDGE