Case 3:23-cv-00356   Document 67   Filed on 07/18/25 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
July 18, 2025
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

GALVESTON DIVISION

No. 3:23-cv-356

MICHAEL RAMIREZ, *PLAINTIFF*,

v.

CITY OF TEXAS CITY, *DEFENDANT*.

**MEMORANDUM OPINION AND ORDER ENTERING FINDINGS OF FACT AND CONCLUSIONS OF LAW**

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

This case concerns Texas City's demolition of Michael Ramirez's fire-damaged real property. Ramirez sued in state court, charging the city's demolition was in violation of the U.S. and Texas Constitutions because it was done without proper pre-demolition notice, judicial process, or just compensation. After the city removed to this court, Ramirez filed a motion for partial summary judgment, which the court denied. Dkt. 15. The parties proceeded with discovery and later filed cross-motions for summary judgment. The court denied the city's motion and granted Ramirez's in part and denied it in part, holding (1) a genuine issue of material fact remained as

to whether the property presented a "clear and imminent danger" justifying emergency demolition, and (2) even if emergency demolition was justified, the city violated Ramirez's due-process rights when it failed to provide him with adequate pre-demolition notice. Dkt. 39.

A one-day bench trial followed. After careful consideration of the pleadings, briefs, exhibits, testimony, arguments, and applicable law, the court submits the following findings of fact and conclusions of law under Fed. R. Civ. P. 52(a)(1).[*]

## I. Findings of Fact

After reviewing and assigning each piece of evidence the credibility it deserves, the court finds as follows:

1. Michael Ramirez owned real property located at 13 19th Street in Texas City. Ramirez intended to remodel the property and resell it for profit.

2. On or around April 10, 2022, an electrical fire erupted inside the property. Firefighters responded to the incident.

3. The fire and the water used to extinguish the fire damaged the property.

4. The property's total damage was significant and extensive, albeit repairable.

---

[*] Any findings of fact that are also, or only, conclusions of law are so deemed. Any conclusions of law that are also, or only, findings of fact are so deemed.

5. The property specifically suffered damage to its windows, finishes, sheetrock, rafters, ceiling and wall framing, exterior and interior doors and door frames, exterior and interior trim and siding, insulation, wiring and fixtures, roof, and roof framing. The fire also left a significant amount of ash and debris on the property.

6. The property's roof had a 2-by-2- to 4-by-4-foot hole in it, which was temporarily covered by a tarp that did not completely seal the exposure. At some point the tarp deteriorated, leaving the property's interior further exposed.

7. Ramirez replaced the property's broken windows with boards that did not completely seal the openings.

8. In this state, the property had two separate incidents of a break-in and a theft.

9. On April 13th, 2022, Texas City sent Ramirez a Notice of Substandard Structure and of Abatement, notifying him that the city determined his property was "substandard" and presented a "clear and imminent danger to the life, safety or property of any person and will be abated without further notice."

10. Ramirez retained Michael Gaertner, a licensed architect, to help him obtain a permit to begin property renovations and draft repair plans. Ramirez ceased his communications with the city after retaining Gaertner.

11. Gaertner submitted a proposed repair plan to the city. The city attorney informed him the permit process could not proceed until he provided a report from an engineer. It is evident from Gaertner's repair-and-alteration-specification plan that he knew the city required a structural-engineer report.

12. An efficient way to begin renovating a fire- and water-damaged property is to retain a structural engineer to remove debris and damaged sheetrock, assess the condition of the structure's wooden elements, and identify what repairs are needed.

13. Ramirez and Gaertner never obtained the required structural-engineer report.

14. The damaged property languished without repair for about a year until its demolition on or around May 9th, 2023.

15. No further notices or hearings were made to Ramirez before the demolition.

16. Ramirez did not offer expert testimony on damages. Ramirez testified as a lay witness as to his property's value under the property-owner rule. *See Pittman v. U.S. Bank NA, Tr. to Bank of Am., NA*, 451 F. Supp. 3d 686, 689 (E.D. Tex. 2020) ("[Plaintiff], as owner of the Property, may testify regarding the market value of the Property."); *DZM, Inc. v. Garren*, 467 S.W.3d 700, 703 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (same).

## II.  Conclusions of Law

The only remaining legal issues in this case are (1) whether Ramirez's property presented a clear and imminent danger, (2) damages, and (3) attorney's fees.

### A.  Clear and Imminent Danger

Under Texas law, a municipality may require a property's demolition if it is "dilapidated, substandard, or unfit for human habitation and a hazard to the public health, safety, and welfare." Tex. Loc. Gov't Code § 214.001(a)(1). A building may be considered "substandard" in 13 different ways. Tex. City, Tex., Code of Ordinances Title XV, ch. 150, § .033(A)(1)–(13). Among them is:

> Whenever the building, dwelling or structure has been so damaged by fire, wind, earthquake or flood, or has become so dilapidated or deteriorated, as to become an attractive nuisance to children, or a harbor for vagrants, criminals or immoral persons, or as to enable persons to resort thereto for the purpose of committing unlawful or immoral acts.

*Id.* § 033(A)(4). If a building is substandard, the city must give the owner written notice of the state of their property and a hearing before the Building and Standards Commission with extensive procedures. *Id.* §§ .034(B), .035; *see also Kinnison v. City of San Antonio*, 480 F. App'x 271, 276 (5th Cir. 2012) (state actors must "afford [property owners] an

opportunity to present their objections") (quoting *Dusenbery v. United States*, 534 U.S. 161, 168 (2002)).

But a building may be both "substandard" *and* a "clear and imminent danger." Texas City law provides that its "Fire Marshal, Director of Community Development, Director of Municipal Services, or Chief Building Official or their designees" may order a building's demolition if it presents "a clear and imminent danger to the life, safety or property of any person." Code of Ordinances Title XV, ch. 150 § .038(A)(1). A demolition for this reason is an emergency demolition, but should come with the procedural protections discussed in the court's memorandum opinion resolving the parties' cross-motions for summary judgment. Dkt. 39 at 8–11.

The evidence clearly demonstrates that Ramirez's property was a public nuisance and "substandard." *See* Code of Ordinances Title XV, ch. 150, § .033(A)(4). But a property being merely "substandard" does not automatically subject it to emergency or summary demolition. Rather, properties under the "substandard" category should have their nuisances abated in compliance with the procedural protections under §§ .034 and .035 (written notice and hearing). Because the city did not afford Ramirez an opportunity to be heard, his due-process rights were violated.

The evidence does not demonstrate that the property presented a clear and imminent danger requiring emergency demolition. Not only did the

court hear credible testimony that the property's danger was *not* imminent, but the city's fire marshal conceded its threat was merely "potential." And if the property truly presented a clear and imminent danger, the city surely would not have waited *an entire year* to demolish it. The city's delay "call[s] into question the existence of an emergency." *Kinnison*, 480 F. App'x at 279 (citation modified); *see also Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 341 (5th Cir. 2002) (the "key question" in a pre-notice deprivation case is "not whether [the property] was *actually* a danger, but whether the [city] had reasonable grounds for" believing so). For these reasons, the court finds that Ramirez's property did not present a "clear and imminent danger" requiring emergency demolition.

### B. Damages

Having found that Ramirez's property was a public nuisance but not a clear and imminent danger, the court now turns to damages. To establish the fair-market value of his fire-damaged property, Ramirez testified as a lay person under the property-owner rule, which allows property owners to offer opinions within their personal knowledge about their property's value. *See Pittman*, 451 F. Supp. 3d at 690.

The city did not contest Ramirez's valuations but instead objected that he exceeded the property-owner rule's scope. Dkt. 60 at 135–36, 147–48 (objecting to testimony about property's market value based on another

"quote from a builder"); *see LaCombe v. A-T-O, Inc.*, 679 F.2d 431, 434 (5th Cir. 1982) (holding property owner's testimony based on depreciation schedules rather than personal knowledge "goes to its weight" and "not to its admissibility").

The court appreciates the parties' efforts to resolve Ramirez's damages. Ultimately, however, the court finds that an extended compensatory-damages analysis is unnecessary because the city's demolition amounted to abatement of a public nuisance. Further, the court finds unpersuasive Ramirez's testimony that the city demolished more than necessary.

### 1. Abating a Public Nuisance

"Federal jurisprudence recognizes a nuisance exception to takings claims." *Rhone v. City of Tex. City*, No. 3:21-CV-74, 2022 WL 3453351, at *4 (S.D. Tex. July 18, 2022) (Galv. Div.), *aff'd*, 111 F.4th 680 (5th Cir. 2024) (internal quotation marks omitted). Indeed, if a property is a nuisance on demolition day, then the state owes no just compensation to the property owner. *RBIII, L.P. v. City of San Antonio*, No. SA-09-CV-119-XR, 2010 WL 3516180, at *12–13 (W.D. Tex. Sept. 3, 2010); *see also Vulcan Materials Co. v. City of Tehuacana*, 369 F.3d 882, 892 (5th Cir. 2004) ("[E]ven if the current value of the claimant's property has been destroyed, the claimant cannot recover if the 'background principles of the State's law of property

and nuisance' would have prohibited that activity as a nuisance." (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1029 (1992))). Because the court has already found that Ramirez's property presented a public nuisance, Ramirez is not entitled to just compensation under the Fifth Amendment.

Texas recognizes a similar nuisance exception. *City of Dall. v. Stewart*, 361 S.W.3d 562, 569 (Tex. 2012) ("[T]he government commits no taking when it abates what is, in fact, a public nuisance."); *Commons of Lake Hous., Ltd. v. City of Hous.*, 711 S.W.3d 666, 679–80 (Tex. 2025), *reh'g denied* (May 30, 2025) ("[W]hen the government exercises its police power to, for example, abate a public nuisance . . . no compensable taking occurs even though property owners lose some control over their property rights."). Thus, although Texas property owners may "seek compensation for the government's taking or damaging of [his] property" through an inverse-condemnation claim, "nuisance determinations are typically dispositive in [such] cases." *Rhone*, No. 3:21-CV-74, 2022 WL 3453351, at *5. Accordingly, Ramirez is not entitled to just compensation under the Texas Constitution.

### 2. Personal Property Within the Nuisance

Ramirez asks the court to find that his damages include "the value of the materials stored in the home awaiting permission to begin renovation." Dkt. 64 ¶ 19. Ramirez testified under the property-owner rule that the cost of

these materials was $15,000. Dkt. 60 at 134–35. Before the court can address whether Ramirez is owed just compensation for demolished personal property inside a nuisance, it must first answer whether Ramirez had a reasonable privacy interest in such property to protect it from warrantless seizure.

The answer is no. Property owners have "little or no reasonable expectation of privacy in their dilapidated, uninhabited rental properties after the [city] had entered orders declaring them an urban nuisance." *Freeman v. City of Dall.*, 242 F.3d 642, 652 (5th Cir. 2001) (en banc); *see also Hroch v. City of Omaha*, 4 F.3d 693, 697 (8th Cir. 1993) (holding Fourth Amendment interest in personal property within nuisance structure "negligible" because property owner "failed to take 'normal precautions to maintain his privacy'" despite knowing demolition was imminent (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 105 (1980))).

The facts of this case differ from *Freeman* in that the city did not properly follow its due-process procedures before abating the nuisance. Nevertheless, this distinction matters not as Ramirez still had some—though not complete—notice that the city considered his property "substandard," subject to "abate[ment] without further notice," and knew that the property was encountering break-ins and property theft. Dkts. 25-3; 60 at 140; *see Michigan v. Clifford*, 464 U.S. 287, 292 (1984) (privacy expectations in

fire-damaged homes "vary with the type of property, the amount of fire damage, the prior and continued use of the premises, and in some cases the owner's efforts to secure it against intruders").

Considering this precedent and acknowledging that Ramirez was not residing in the property, did little to prevent further break-ins or property theft, allowed the home to languish for nearly a year without performing any substantial property repairs, and failed to obtain any of the necessary repair permits from the city, the court concludes Ramirez's privacy interest in the reparation materials inside the property was negligible. Ramirez is not entitled to compensatory damages for the loss of any personal property inside the nuisance.

### 3. Nominal Damages

While Ramirez is not entitled to compensatory damages, that fact alone "do[es] not diminish the significance of a finding of a constitutional violation." *Estate of Farrar v. Cain*, 941 F.2d 1311, 1315 (5th Cir. 1991). Indeed, because "[a] violation of constitutional rights is never *de minimis* . . . a party who proves a violation of his constitutional rights is entitled to nominal damages even when there is no actual injury." *Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988); *see also Farrar v. Hobby*, 506 U.S. 103, 112 (1992) (courts are obligated "to award nominal damages when a plaintiff establishes the violation of his right to procedural due process but

cannot prove actual injury"). Awarding nominal damages for constitutional violations ensures "the law recognizes the importance to organized society that those rights be scrupulously observed." *Carey v. Piphus*, 435 U.S. 247, 266 (1978).

Accordingly, the court awards Ramirez $1 in nominal damages. *See, e.g.*, *Muniz v. City of San Antonio*, 476 F. Supp. 3d 545, 560 (W.D. Tex. 2020) (awarding nominal damages of $1 after finding city ordinance unconstitutional); *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1015 (5th Cir. 2003) (finding no abuse of discretion on review of district court's grant of $100 in nominal damages under § 1983 because $100 is "an insignificant sum" in commercial-disputes case).

### C. Attorney's Fees

Finally, attorney's fees. Counsel for Ramirez filed an affidavit on attorney's fees, in which she avers her reasonable and necessary attorney's fees are $57,880.80. Dkt. 63 at 12. She also states "[t]he [c]ity has been unwilling to meaningfully discuss compensation throughout this case." *Id.* at 7. The city's proposed findings of fact and conclusions of law say nothing about attorney's fees. Dkt. 66.

In § 1983 suits, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

The court must therefore determine whether Ramirez is a prevailing party before it considers what attorney's fees Ramirez is entitled to, if any.

"That a court or jury finds a [constitutional] violation does not, by itself, create prevailing-party status" under §§ 1983 and 1988. *Estate of Farrar*, 941 F.2d at 1317. Rather, a party prevails "when a court conclusively resolves [his] claim by granting enduring judicial relief on the merits that alters the legal relationship between the parties." *Lackey v. Stinnie*, 145 S. Ct. 659, 669 (2025); *see also Farrar*, 506 U.S. at 111–12 (prevailing-party status depends on whether the litigation "materially alters the legal relationship between the parties").

In many instances, plaintiffs who receive only nominal damages are prevailing parties under §§ 1983 and 1988. *See, e.g.*, *Farrar*, 506 U.S. at 113–14 (holding "the prevailing party inquiry does not turn on the magnitude of the relief obtained"). But this is not always the case. Indeed, some plaintiffs who receive nominal damages may "formally prevail[] under § 1988" yet "receive no attorney's fees at all." *Id.* at 115 (internal quotation marks omitted). The plaintiffs in *Farrar* exemplify this type of prevailing party. Despite seeking $17 million in compensatory damages, the Farrars received only $1 in nominal damages. *Id.* at 106, 107. The Supreme Court reasoned that because the "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained," the Farrars' $1 damages

award "accomplished little beyond giving petitioners the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated." *Id.* at 114 (alteration in original) (internal quotation marks and citations omitted). The Farrars were accordingly not awarded attorney's fees. *Id.* at 115–16.

*Farrar* applies with equal force in takings and inverse-condemnation cases. In *Hidden Oaks Ltd. v. City of Austin*, the Fifth Circuit found "that the district court acted well within its discretion by denying" a plaintiff's request for attorney's fees because there was "no evidence at trial indicating any damage specifically arising from the procedural due process violation." 138 F.3d 1036, 1052 (5th Cir. 1998). Also, like here, the due-process violation "was peculiar to [the plaintiff], not general in the sense that the City would be forced to change its dealings with other landowners as a result." *Id.* at 1053. Here, the court reaches the same conclusion—there is no evidence Ramirez suffered damages specifically stemming from the city's due-process violation.

Applying § 1988(b) and the applicable case law, the court finds that Ramirez has not secured a victory that entitles him to prevailing-party status and attorney's fees.

\* \* \*

Based on the fact findings and legal conclusions set forth above, the court concludes that although Ramirez's fire-damaged home was "substandard" and a public nuisance, it was not a clear and imminent danger that justified Texas City's emergency demolition actions. Because Ramirez was not afforded an opportunity to be heard, the city deprived him of due process. Ramirez is therefore awarded $1 in nominal damages. Each party shall bear his or its own attorney's fees and costs.

Signed on Galveston Island this 18th day of July, 2025.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE